# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Marvin George Towns, Jr.,

                    Plaintiff,      Case No. 1:19-cv-03248

v.                          Michael L. Brown
                                United States District Judge
Directors Guild of America, Inc., et al.,

                    Defendants.

_____/

## OPINION & ORDER

Defendants Directors Guild of America, Inc. ("DGA") and And Action, LLC ("And Action") move to dismiss. (Dkts. 45; 46.) The Court grants Defendant DGA's motion. The Court grants in part and denies in part Defendant And Action's motion. Plaintiff moves for the Court to compel arbitration. (Dkt. 52.) The Court denies that motion.

## I.  Background

Defendant DGA is a national labor organization. (Dkts. 5-2 § 1-101; 44 ¶¶ 2, 19–22.) In 2017, Defendant DGA negotiated a collective bargaining agreement called the "Basic Agreement" with employers in

the motion picture and television production industry.  (Dkts. 5-2; 5-3.)
The Basic Agreement creates an employment scheme for senior-level
personnel hired by production companies.  (Dkt. 5-2 §§ 14-200 *et seq.*)  As
part of this, it provides for the creation of Qualification Lists that
document a person's experience working in various positions.   (*Id.*)
Indeed, the Basic Agreement breaks the country into three geographic
areas and has different Qualification Lists for each.  (*Id.* § 1-14-201.)  The
Basic  Agreement  then  requires  employers  to  give  preference  to
employees on the lists.  (Dkts. 5-2 § 14-505(b); 44 ¶ 36.)

This dispute involved the so-called "Third Area" Qualification List
for Unit Production Managers ("UPMs").  (*Id.* §§ 1-302, 14-502.)  The
Basic Agreement states that a person can be included on this list if he or
she has worked as a First Assistant Director (a lower-level position) for
240 days or as a UPM for 120 days.  (Dkt. 5-2 § 14-504.)  If a UPM on the
list applies for a job, the employer must give that person a preference
over any non-listed UPM.  (Dkts. 5-2 § 14-505(b); 44 ¶ 36.)  An employer
who is a party to the Basic Agreement may only hire a non-listed UPM if
no listed UPM is available.  (*Id.*; *see also* Dkt. 44 ¶ 36.)

2

A separate entity, Defendant Directors Guild of America Contract Administration ("DGACA"), administers the Qualification Lists.[1]  (Dkts. 5-2 § 14-201; 44 ¶¶ 8, 20, 26, 29.)  Defendant DGACA determines only whether a prospective employee has properly documented his or her qualifications to be included on a given list.  (Dkts. 1-1 at 52; 44 ¶ 20.) Plaintiff admits that a person does not have to join the DGA in order to be included on a Qualification List.  (*Id.* ¶¶ 8, 25, 27.)  A person who qualifies for a certain list merely has to provide Defendant DGACA information and proof about his or her work experience to be included on that list.  (Dkt. 5-2 § 14-502.)

Defendant And Action is a production services company that produces television shows.  (Dkt. 44 ¶ 12.)  It agreed to comply with the Basic Agreement for the production of shows at issue in this case. (Dkt. 1-1 at 52.)  As a result, it was required to apply the Qualification List preference when hiring employees into positions covered by a list. (*Id.*)  Plaintiff is a member of the DGA.  (Dkts. 5-2 § 1-101; 44 ¶¶ 2, 19– 22.)  In May 2019, Defendant And Action hired Plaintiff as a UPM for a production in Georgia, and Plaintiff moved here from Michigan.  (*Id.*

---

[1] Plaintiff also sues the DGACA in Counts One and Two.

¶¶ 1, 12.)  Sometime after that, Defendant DGA told Defendant And Action that Plaintiff was not on the Qualification List for UPMs and that it had breached the Basic Agreement by hiring Plaintiff for that position. (*Id.* ¶ 37.)  Defendant And Action then terminated Plaintiff's employment.  (*Id.*)

Plaintiff sued Defendants DGA and And Action.  (Dkt. 1-1.)  After they moved to dismiss, he filed an amended complaint to reiterate several claims and add Defendant DGACA.  (Dkt. 44.)  In his amended complaint, Plaintiff claims all three Defendants violated Georgia's right-to-work statute (Count One); Defendants DGA and DGACA tortuously interfered with his "contractual relations" and "business" (Count Two); Defendant DGA breached its fiduciary duty of utmost good faith under O.C.G.A. § 23-2-58 (Count Three); Defendant DGA negligently interpreted the Basic Agreement in its application to him (Count Four); Defendant And Action breached its contract with him or alternatively violated Georgia's promissory estoppel law (Count Five); Defendant And Action negligently represented the work it would provide him (Count Six); and all Defendants are liable for attorneys' fees and punitive damages for having acted in bad faith (Count Seven).  (Dkt. 44 ¶¶ 61–87.)  Defendants DGA

4

and And Action again moved to dismiss.  (Dkts. 45; 46.)  Plaintiff responded, conceding some of Defendants' arguments.  (Dkt. 49.) Plaintiff then moved to compel arbitration.  (Dkt. 52.)

## II.   Motions to Dismiss (Dkts. 45; 46)

### A.   Standard of Review

A court may dismiss a pleading for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

### B.   A Word About Plaintiff's Failure to File A Meaningful Response

Plaintiff filed a five-page response to Defendants' motions to dismiss.  (Dkt. 49.)  His response is largely meaningless and totally unhelpful to the Court.  Plaintiff failed to address Defendants' substantive arguments.  He seemed to concede Defendant's primary

argument that his claims are preempted by federal law because interpretation of the Basic Agreement would "admittedly be required for the Court to rule" on all of his claims. (Dkt. 49 at 2.) He then claimed Defendants admitted his right to arbitration and says he "agrees" this case should proceed in arbitration. (*Id.*) Of course, Defendants did not say Plaintiff has a right to arbitration. In their reply briefs, Defendants picked up on Plaintiff's concession that his claims require interpretation of the Basic Agreement and argued Plaintiff essentially agrees with their preemption argument. But, possibly forgetting what he had said in his response, Plaintiff filed a motion for arbitration in which he "vigorously disagree[d]" with Defendants' preemption arguments and insisted those arguments are "directly contrary to the law." (Dkt. 52 at 2–3.) So what is it — does Plaintiff agree there is preemption or not? Unclear.

Our system works through the adversarial process. One party takes a position, and the other party responds. When a party fails to respond to substantive arguments (or even worse tries a sidestep as Plaintiff does here), it deprives the Court of legal advocacy and insight that it might use in arriving at the proper result. "Judges are not like pigs, hunting for truffles buried in briefs" or researching responsive

arguments that parties refuse to make for themselves. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Plaintiff should carry his own water in opposing Defendants' motions. Given the nature of Plaintiff's response, the Court interprets it not as a response, but as a motion for arbitration. Under Local Rule 7.1(B), "[f]ailure to file a response shall indicate that there is no opposition to the motion." Those claims are thus deemed unopposed. *See Milon v. Bank of Am., N.A.*, 1:14-cv-01405, 2015 WL 11251927, at *4 (N.D. Ga. Feb. 19, 2015). "An unopposed motion does not mean that the moving party automatically prevails; rather, the Court is still to consider the merits of the motion." *Williams v. Ocwen Loan Servicing, LLC*, 1:10-cv-740, 2010 WL 11598004, at *1 (N.D. Ga. Oct. 19, 2010). The Court has endeavored to do that but admonishes Plaintiff to participate fully in any further litigation.

## C. Discussion

### 1. Right-to-Work Claim

Plaintiff claims Defendant And Action fired him for not being on the Qualification List in violation of Georgia's right-to-work statute. He also brings this claim against Defendant DGA, claiming it pressured Defendant And Action to fire him, and Defendant DGACA, claiming it

incorrectly failed to include him on the Qualification List for UPMs. Georgia's right-to-work statute provides that "[n]o individual shall be required as a condition of employment or continuance of employment to be or to remain a member or an affiliate of a labor organization or to resign from or to refrain from membership in or affiliation with a labor organization."   Ga. Code Ann. § 34-6-21(a).   An employer is thus prohibited from conditioning employment on an employee's membership status in a labor organization.  That statute defines a labor organization as "any organization of any kind or any agency or employee representation, committee, or plan in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."[2] Ga. Code Ann. § 34-6-20(6).

Even accepting as true Plaintiff's allegation that Defendant And Action fired him (at Defendant DGA's insistence) for not being on the Qualification List, Plaintiff's right-to-work claim fails as a matter of law. The Qualification List does not meet the statutory definition of a labor

---

[2] In the complaint, Plaintiff argues the dictionary definitions of labor organization should apply.  (Dkt. 44 ¶¶ 32, 33.)   The Court rejects that argument because the statute lists the definition.

organization.  The Qualification List simply categorizes workers based on the experiences they have in various positions.  It does not "exist[ ] for the purpose, in whole or in part or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."  *Id.*  Plaintiff alleges that, because the Qualification List "acts as a gateway to wages, pay, and work itself," it qualifies as a "labor organization" as contemplated by the Georgia statute.  (*Id.* at 27.)  Other than a legal conclusion, he includes no factual allegations that — taken as true — would establish the lists as a labor organization under Georgia law.  Plaintiff simply does not allege the Qualification List exists to deal with employers on grievances, pay, or anything like that.

The only labor organization at issue in this case is Defendant DGA. (Dkts. 5-2 § 1-101; 44 ¶ 21 ("[DGA] claims the right to advance the interest of both employers and employees in the film making business").) But, while Plaintiff is a member of DGA, he was not required to be a member in order to be included on the Qualification List.  He admits this. (Dkt. 44 ¶¶ 25, 27.)  The amended complaint thus contains no allegation

Plaintiff was required to join (or refrain from joining) any labor organization as a condition to obtaining or maintaining his employment.[3]

The Qualification Lists certainly provides a benefit to employees and employers. It allows employees to document their experience in various jobs and obtain a preference (or inside track) for similar or even better jobs. It allows employers access to lists of potential employees with confirmed experience and (presumably) abilities. It may even allow DGA to advocate for its members by including hiring preferences in the Basic Agreement. But, the mere fact that it impacts employees or can be used to advance (or hinder) their ability to obtain a job does not make it a labor organization under Georgia law. To qualify, it must exist for the purpose of dealing with employers on pay, grievance, or similar work issues. It does not and thus Plaintiff's right-to-work claim is dismissed.[4]

---

[3] In the complaint, Plaintiff cites several cases for the proposition that Georgia's right to work statute encompasses the Qualification List, but these cases do not discuss the meaning of the term "labor organization." (*See* Dkt. 44 ¶ 28 (citing *Artic, Inc. v. NLRB*, 810 F.2d 1080 (11th Cir. 1987) (discussing the rights of strikers under the National Labor Relations Act, 29 U.S.C. § 158); *NLRB v. Teamsters Gen. Local Union No. 200*, 723 F.3d 778 (7th Cir. 2013) (discussing a union's responsibilities under the duty of fair representation)).

[4] Plaintiff also brings the right to work claim against the DGACA. That claim fails for the same reasons it fails against the other defendants.

## 2.      Remaining Claims Against Defendant DGA

Defendant DGA argues Section 301 of the Labor Management Relations Act ("LMRA") preempts Plaintiff's remaining state law claims against it.  Section 301 was intended as "a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 206, 209 (1985). While the statute itself refers to "suits for violations of contracts," the Supreme Court has explained that "the pre-emptive effect of 301 must extend beyond suits alleging contract violations." *Id.*  The Court explained that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal laws, whether such claims arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Id.*  So, "when resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor agreement, that claim must either be treated as a § 301 claim or dismissed as preempted by federal labor-contract law." *Id.* at 220 (citation omitted).  The Eleventh Circuit has held that Section 301 of

11

the LMRA "preempts a state-law claim if resolution of the claim 'requires the interpretation of a collective bargaining agreement.'" *United Steel, etc. Workers v. Wise Alloys, LLC*, 642 F.3d 1344, 1350 (11th Cir. 2011).

The applicable collective bargaining agreement here is the Basic Agreement.  All of Plaintiff's claims against Defendant DGA rely on an interpretation of the Basic Agreement and are thus preempted.  In Count Two, for example, he alleges "Interference with Town's Rights in Bad Faith *and Even In Breach of the Basic Agreement Provisions* which Harms Towns Irreparably."  (Dkt. 44 at 34 (emphasis added).)   While difficult to understand this claim, Plaintiff alleges Defendant DGA breached the Basic Agreement, thus requiring an interpretation of that collective bargaining agreement.  He also claims Defendant DGA caused Defendant And Action to have him fired for not being on the Qualification List even though he met the qualifications.  (Dkt. 44 ¶ 46.)  To know whether he was entitled to be on the Qualification List, the Court would have to interpret the standards set forth in the Basic Agreement.

He also seems to be alleging Defendant DGA tortuously interfered with his business relationship with Defendant And Action simply by informing Defendant And Action that he was not on the Qualification

List.  (Dkt. 44 ¶ 67.)  But Plaintiff's contract with Defendant And Action expressly states that Plaintiff's "employment is subject to the provisions of the Directors Guild of America, Inc. Basic Agreement."  (Dkt. 1-1 at 52.)   To determine whether Defendant DGA tortuously interfered with a business relationship (that is, Plaintiff's employment contract) or merely enforced the terms of the Basic Agreement to which the employment contract was subject necessarily requires consideration of the Basic Agreement's terms.   What is more, a claim of tortious interference under Georgia law requires "improper or wrongful conduct by the defendant without privilege".  *See Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Cmty. Trust*, 780 S.E.2d 311, 321 (Ga. 2015). To the extent Defendant DGA merely asserted its contractual rights under the Basic Agreement against Defendant And Action, Defendant DGA would not have violated Georgia law.  Any application of Plaintiff's allegations in Count Two necessarily requires the interpretation and application of the labor agreement.  Count Two is thus preempted.  *See Lueck*, 471 U.S. at 220. [5]

---

[5] Plaintiff also brings this tortious interference claim against Defendant DGACA.  That claims fails against DGACA for the same reasons it fails against Defendant DGA.

In Count Three, Plaintiff asserts a breach of fiduciary duty claim under O.C.G.A. § 23-2-58.  That statute imposes a duty of "utmost good faith" in confidential relationships "such as the relationship between partners, principal and agent, etc."  O.C.G.A. § 23-2-58; *see also Bienert v. Dickerson*, 624 S.E.2d 245, 248 (Ga. Ct. App. 2005).  Plaintiff does not allege that type of relationship in his complaint.  But, the Georgia statute says such a relationship can also arise "from contract."  O.C.G.A. § 23-2-58.  In the same count, Plaintiff alleges that Defendant DGA "has asserted total control over Town's ability to work . . . and [Defendant] And Action's ability to hire" him.  (Dkt. 44 ¶ 70.)  Any influence Defendant DGA had arose only from the Basic Agreement.  The extent of its control over Plaintiff's ability to work thus requires interpretation of the Basic Agreement, requiring preemption.

Plaintiff's final claim against Defendant DGA (Count Four) alleges that it negligently interpreted "the provisions of the [Basic Agreement] as they applied to him."  (Dkt. 44 ¶ 74.)  He further claims that Defendant DGA is "actively making a negligent interpretation of what [Plaintiff] is allowed to do under the [Basic Agreement]" and has negligently advised Defendant And Action "concerning what employers have to do in relation

14

to the qualification list." (*Id.* at ¶ 75.) Needless to say, whether Defendant DGA improperly interpreted the Basic Agreement or negligently advised Defendant And Action as to its obligations under the Basic Agreement requires an interpretation and application of the collective bargaining agreement.

All of Plaintiffs claims against Defendant DGA are dismissed as preempted by federal labor law.[6]

---

[6] Defendant DGA also moved to dismiss the claims against it because they are preempted by the duty of fair representation. The duty of fair representation is a federal law doctrine that requires a union to represent employees fairly. *Air Line Pilots Ass'n, Intern. v. O'Neil*, 499 U.S. 65, 67 (1991). A union breaches this duty if its actions are "arbitrary, discriminatory, or in bad faith." *Id.* This duty "applies to all union activity, including contact negotiation." *Id.* The duty of fair representation preempts state law claims that fall within its scope. *See Dunn v. Air Line Pilots Ass'n*, 836 F. Supp. 1574, 1578 (S.D. Fla. 1993) ("[The duty of fair representation] is defined by federal law, which preempts the application of state substantive law in the area."). When analyzing whether a claim is preempted by the duty of fair representation, a court looks to the " 'substance' of the state law claims rather than their 'form' " *Id.* Plaintiff essentially claims Defendant DGA wrongfully caused him to lose his job by demanding Defendant And Action fire him. A union causing a plaintiff's loss of employment is under the reach of the duty of fair representation. *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1158 (10th Cir. 2000) (finding the plaintiff's termination to be under the duty of fair representation); *Peterson v. Air Line Pilots Ass'n, Intern.*, 759 F.2d 1161, 1170 (4th Cir. 1985) ("The only losses [the plaintiff] has sustained were caused by his wrongful discharge. Under federal law Peterson may recover all of his damages if he can prove they were attributable to the union's

### 3.    Claims Against Defendant And Action

Plaintiff's claims against Defendant And Action fare better.  In Count Five, he alleges Defendant And Action breached their contract when it fired him for not being on the Qualification List of UPMs in the Third Area.  As explained above, that contract incorporated the Basic Agreement.  So the analysis of Plaintiff's breach of contract claim necessarily requires an interpretation of the collective bargaining agreement.  But, in Count Five, Plaintiff alternatively alleges promissory estoppel.  He claims Defendant And Action made promises to him about the "specific duration and rate of pay" he would receive and that he relied on those promises in moving to Georgia and foregoing other opportunities.   Defendant And Action says these promises are unenforceable because "any reliance interest Plaintiff may have is dependent upon reliance created by the parties' contractual agreements." (Dkt. 46-1 at 14.)  That is not correct. Plaintiff's promissory estoppel claim relies — not on an allegation that Defendant And Action violated

---

misconduct.").  Plaintiff's claims could also be construed as duty of fair representation claims and preempted on that basis.

16

the Basic Agreement — but rather a claim that it failed to honor other promises it made to him.

Defendant And Action also cites *Barker v. CTC Sales Corp.*, 406 S.E.2d 88, 90 (Ga. Ct. App. 1991), for the proposition that promissory estoppel "has no application . . . where the promise relied upon was for employment for an indefinite period." (Dkt. 46-1 at 14.) But, Plaintiff does not allege a promise of indefinite employment as occurred in that case. He claims Defendant And Action induced him to come to Atlanta by offering him employment as a UPM for the filming of sixteen television episodes of *The Haves and Have Nots* beginning on May 6, 2019, and lasting five months. Far from indefinite. (Dkt. 44 ¶ 16.)[7] He also details the steps he took in reliance on that alleged promise. (*Id.* ¶ 12.) While he and Defendant And Action may have executed only a one-week contract and that contract incorporated the Basic Agreement, his promissory estoppel claim seems to rely upon some other promises made

---

[7] Plaintiff claims that he had other "deals" with Defendant And Action in place when he moved to Atlanta, specifically work on *The Oval* and *Sistas*. (Dkt. 44 ¶ 17.) He does not provide the dates for those projects but also does not allege indefinite employment. At any rate, his allegations of promises about work on *The Haves and Have Nots* are sufficient to demonstrate Plaintiff is not asserting a promise of employment for an indefinite period.

to him.  And the contract he signed included no merger clause nullifying the legal impact of any prior promises.  Plaintiff's promissory estoppel claim does not rely upon the Basic Agreement and is not preempted.

The same is true of his negligent misrepresentation claim in Count Six.  Plaintiff does not allege a breach of any agreement; he claims Defendant And Action negligently misrepresented "the work it had for him, the suitability of the work for him . . . the duration of the work, and the pay of the work." (Dkt. 44 ¶ 83.)  Defendant And Action again alleges Plaintiff cannot rely upon these representations because he signed only a one-week agreement.  But, again, that agreement had no merger clause. Moreover, he claims he moved to Atlanta on May 3, 2019, as a result of the misrepresentations and signed the one-week contract on May 7, 2019. (Dkts. 44 ¶ 16; 1-1 at 52.)  Defendant And Action cites no authority to suggest that, in the absence of a merger clause, an employee cannot bring a claim for negligent misrepresentation based on an employer's allegedly false representations of employment for a definite term that induces the employee to move states and forego other opportunities.[8]

---

[8] Defendant And Action also argues §§ 8(a)(3) or 8(b)(1) or (2) of the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* ("NLRA"), preempt Plaintiff's claims.  Section 8(a)(3) of the NLRA restricts employers from

As noted above, in his response to Defendants' motions to dismiss, Plaintiff seems to concede all his claims require interpretation of the Basic Agreement. (Dkt. 49 at 2.) Defendants targeted that admission in their replies. He certainly has made a broad admission and the Court agrees with his concession as to Counts Two through Four and the contract claim in Count Five. It appears Plaintiff spoke too broadly, perhaps in his efforts to convince the Court to compel arbitration. A court is not generally required to save a party from itself. But despite Plaintiff having failed to engage on the issue, the Court has done some truffle hunting on his behalf and cannot agree that his admission requires preemption of an otherwise non-preempted claim. The Court thus denies

---

discriminating against union employees or from discouraging membership in a labor organization. Section 8(b)(1)(B) prevents a union from restraining or coercing an employer in the adjustment of employee grievances. And section 8(b)(2) prevents a union from causing an employer to discriminate against an employee based upon his or her union status. Both of Plaintiff's remaining claims are that in moving to Atlanta, he relied on Defendant And Action's promise that he would be employed for five months. In these claims, Plaintiff is not alleging Defendant And Action discouraged him from being in a labor organization, nor is he alleging a union coerced or adjusted an employer in the adjustment of employee grievances. He is also not alleging that a union caused an employer to discriminate against him based on his union status. The NLRA thus does not preempt Plaintiff's remaining claims.

Defendant And Action's motion to dismiss the promissory estoppel allegation in Count Five and the negligent misrepresentation claim in Count Six.[9]

### 4.    Attorneys' Fees and Punitive Damages

Claims for punitive damages and attorneys' fees are derivative claims. *See Perkins v. Thrasher*, 701 F. App'x 887, 891 (11th Cir. 2017). Since the Court dismisses the substantive claims against Defendant DGA, the Court also dismisses Plaintiff's claims for punitive damages and attorneys' fees against it.   The derivative claims survive against Defendant And Action because two of Plaintiff's substantive claims against it remain.

## III.   Motion to Compel Arbitration (Dkt. 52)

Citing the Basic Agreement's arbitration clause, Plaintiff moves for arbitration.   The Basic Agreement, however, is a collective bargaining agreement, and individuals do not have the right to seek arbitration

---

[9] In his motion to compel arbitration, Plaintiff alleges the NLRB prevented him from filing a claim because he is a manager. (Dkt. 52 at 3-4.)  He cites no authority for this proposition other than what he was allegedly told by someone.  He also did not raise this argument in opposing Defendants' motion to dismiss.  The Court concludes he has abandoned any such claim for the purposes of the motions to dismiss.

under a union's collective bargaining agreement. *See Local Union No. 1 v. Bass Plumbing & Heating Corp.*, No. 13-cv-3837, 2015 WL 1402884, at *12 (E.D.N.Y. Mar. 25, 2015) ("Clearly, the right to arbitrate vests not in individual employees but in the union which represents them.").

Besides, Plaintiff waived any right to arbitration he had. A party waives his right to arbitration when he "substantially invokes the judicial process to the detriment or prejudice of the other party." *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 576 (5th Cir. 1991); *S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (finding a party prejudiced by an arbitration demand after having had to respond to two dispositive motions and having taken five depositions). As Plaintiff has filed over fifteen documents or motions with the Court, he has invoked the Court's judicial process. (Dkts. 6; 7; 8; 9; 15; 22; 23; 24; 28; 29; 30; 33; 35; 36; 37; 41; 44; 47; 52.) He has also prejudiced Defendants, as they have had to respond to motions for summary judgment and file multiple motions to dismiss. (*See, e.g.*, Dkts. 5; 10; 15; 21; 22; 25.)

What is more, Plaintiff sought decisions on the merits — he filed two motions for summary judgment.[10]  Seeking a decision on the merits before moving to compel arbitration is a disfavored 'wait and see' tactic, which undermines federal principles favoring arbitration.  *See Miller Brewing Co. v. Ft. Worth Distributing Co.*, 781 F.2d 494, 498 (5th Cir. 1986) ("Any attempt to go to the merits and to retain still the right to arbitration is clearly impermissible.").

The Court adds that Plaintiff has not established a right to arbitration.  A court can only compel arbitration "if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins., Co. v. Watts Indus. Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Plaintiff has not established that he has a right to demand arbitration or that any Defendant has refused his request for arbitration.  The Court rejects Plaintiff's motion for arbitration. Perhaps he has a right to arbitration.   Perhaps not.   But the Court has no basis to compel

---

[10] Plaintiff asks the Court to rule on his motions for summary judgment. In allowing Plaintiff to replead, the Court held those motions moot.  (Dkt. 43.)

arbitration when Plaintiff has not properly made such a demand or otherwise perfected any such claim.

## IV.   Conclusion

The Court **GRANTS** Defendant DGA's Motion to Dismiss (Dkt. 45).

The Court **GRANTS IN PART** and **DENIES IN PART** Defendant And Action's Motion to Dismiss (Dkt. 46).   The Court **DENIES** Plaintiff's Motion to Compel Arbitration.

**SO ORDERED** this 15th day of July, 2020.


_____

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

23